UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHANA C. ARUCAN,

    Plaintiff,

v.

CAMBRIDGE EAST
HEALTHCARE/SAVA SENIORCARE
LLC, *et al.*,

    Defendants.

Case No. 16-12726
Honorable Laurie J. Michelson
Magistrate Judge Stephanie Dawkins Davis

**OPINION AND ORDER ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [73] AND GRANTING HEINRICH AND ZAMOJSKI'S AND CAMBRIDGE EAST HEALTHCARE CENTER'S MOTIONS FOR SUMMARY JUDGMENT [50, 52]**

Johana Arucan, proceeding *pro se*, sued her employer for discrimination and wrongful termination. She also sued two police officers who were called to remove her from the premises for constitutional violations. (R. 5.) The Court referred all pretrial matters to Magistrate Judge Stephanie Dawkins Davis. (R. 10.)

Now before the Court are Arucan's objections to the Magistrate Judge's Report and Recommendation to grant Defendants' motions for summary judgment. (R. 73.) For the reasons set forth below, the Court overrules Arucan's objections and accepts the Report.

**I.**

Arucan began working for Cambridge East Healthcare in September 2012 as a full-time physical therapy assistant. (R. 50-6, PID 308.)

Over three years later, on January 5, 2016, Arucan provided physical therapy treatment to the wrong patient. (R. 52-6, PID 556.) Arucan usually treated only patients on her daily list, which

did not include Catherine Y. (R. 71-3, PID 751, 753–54) But because she had extra time (two of her patients did not need services), another physical therapist asked Arucan to treat Catherine Y. (*See id.*) But Arucan treated Catherine B. She discovered the mistake the next day and immediately reported the error to Megan Mocny, the Rehabilitation Manager. (R. 50-6, PID 320, 332.) That same day, Mocny reported the incident to Paige VanTiem, the administrator at Cambridge East. (R. 52-6, PID 558.)

On the morning of January 8, 2016, VanTiem informed Arucan that she was being terminated for treating the wrong patient. (R. 52-8, 565.) VanTiem avers that Arucan refused to sign the termination papers and instead insisted that she was not terminated. (R. 52-6, PID 559.) As she continued to protest, VanTiem instructed Arucan to leave the premises. (*Id.*) Arucan refused. (*Id.*) Instead, she stated that she had patients to treat and left for the second floor. (*Id.*) VanTiem managed to convince Arucan to go to the first floor, but Arucan continued to refuse to leave the premises. (*Id.*)

The Madison Heights Police Department was called. (R. 52-6, PID 559.) Officers John Heinrich and Rick Zamoski responded. (R. 50-3, PID 294; R. 50-4, PID 299.) VanTiem informed the officers that Arucan had been fired and was now refusing to leave. (R. 50-4, PID 299.) The officers claim they told Arucan she needed to leave the premises, but she refused to do so. (R. 50-3, PID 295; R. 50-4, 299.) Instead, she insisted that she needed to stay to see her patients. (R. 50-4, PID 299.) The officers warned Arucan multiple times that if she did not leave the premises she would be arrested. (R. 50-4, PID 299.) Still, Arucan balked. (*Id.*)

So Officer Heinrich handcuffed Arucan and transported her to the police station. (*Id.*) The officers booked her (for trespassing) and placed her in a cell, where she remained until around

lunch time. (R. 50-6, PID 335.) Arucan then went to lunch with some of her former co-workers. (R. 50-6, PID 323.)

Arucan has a different version of the events. She testified that "they said I was not fired" and that VanTiem was only going to talk to "corporate." (R. 50-6, PID 325.) She never heard that she was asked to leave. (R. 50-6, PID 324.) It was a janitor, according to Arucan, who called the police. (R. 50-6, PID 325.) When the police arrived, she told them that she wanted to go home and was going downstairs to collect her belongings. (R. 50-6, PID 334.) The officers never told her that she needed to leave. (R. 50-6, PID 334.) Officer Heinrich took her patient schedule from her pocket and gave it to either VanTiem or Mocny. (R. 50-6, PID 321.) Then Officer Heinrich pulled her hands behind her back and handcuffed her. (R. 50-6, PID 322.) Once at the station, the officers took her belongings, including her lab coat, and asked for $500 in bail. (R. 506-, PID 322.) She was then placed in a cold cell with only a smelly blanket to keep her warm. (R. 50-6, PID 335.) Around lunchtime, some of her former co-workers paid her bail and she left to have lunch with them. (R. 50-6, PID 335.)

Arucan testified that she had pain in her chest as a result of being handcuffed and that she went to urgent care that day and later sought medical treatment from a doctor. (R. 50-6, PID 332–33.) VanTiem took her jacket and lunch box, but those items were mailed to her a week later by Cambridge East. (R. 50-6, PID 326.) She further asserts that she was replaced with a younger male employee. (R. 5, PID 42.)

Arucan ultimately pled "no contest" to trespassing. (R. 50-11, PID 361.)

Arucan filed this lawsuit against her former employer, VanTiem, Mocny, and the two officers. (R. 1.) In her amended complaint, Arucan alleges that Cambridge East discriminated against her based upon her gender, age, color, race, and her ethnicity. (R. 5.) She further alleges

3

wrongful termination, failure to promote, and retaliation. (*Id.*) She also includes claims of intentional infliction of emotional distress and harassment based upon alleged verbal and emotional abuse during her time of employment. (*Id.*) Against the officers, she alleges that she was never given her *Miranda* rights, she was unlawfully arrested, unnecessarily humiliated, handcuffed in a manner that caused her injury, and that she got cold in the cell because they took her lab coat. (*Id.*)

Both Cambridge East and the officers filed for summary judgment. (R. 50, 52.)

For the reasons that follow, the Court will accept the Magistrate Judge's Report and Recommendation to grant Defendants' motions for summary judgment.

## II.

### A.

This Court performs a *de novo* review of those portions of the Magistrate Judge's Report and Recommendation to which the parties have objected. *See* 28 U.S.C. § 636(b). The Court need not and does not perform a *de novo* review of the parts of the report to which Arucan does not object. *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012).

### B.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the

light most favorable to Arucan. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

### III.

Arucan makes 16 objections. But none concern the Magistrate Judge's legal analysis. Instead, they attempt to introduce new facts or arguments, put forth arguments that have no bearing on the Report's recommendations, or re-state her summary judgment arguments without explaining how the Magistrate Judge erred in analyzing those arguments. (R. 77.) The Court will address each objection, but will combine them when they overlap.

### A.

Arucan's first and fifteenth objections concern three court dates in Madison Heights, Michigan that Defendants allegedly failed to show up for in early 2016. (R. 77, PID 986, 992.) Given the time period, the Court assumes that Arucan is referring to her criminal trespassing case. (R. 50-11.) These objections do not affect the outcome of the Report. Defendants' attendance at Arucan's criminal proceedings has no bearing on Arucan's current Title VII claims against her employer and her constitutional claims against Officers Heinrich and Zamojski. The Court therefore overrules Arucan's first and fifteenth objections.

### B.

Arucan's second, eighth and ninth objections are to the Report's treatment of her discrimination claims. (R. 77, PID 987, 989–90.) The Magistrate Judge found that Arucan did not identify any other employees who, like her, treated the wrong patient, and yet were not terminated. Thus, she could not make out a *prima facie* case of discrimination. (R. 73, PID 954–58.) And, further still, the Magistrate Judge found that Arucan failed to show that the reason Cambridge East gave for terminating her was pretext for discrimination. (R. 73, PID 957–58 (citing *White v. Baxter*

5

*Healthcare Corp*, 553 F.3d 381, 393 (6th Cir. 2008).) Arucan does not argue that the Magistrate Judge erred in granting summary judgment on the record before her. Instead, Arucan asserts that other physical therapists who were white or male performed deficiently, received citations, and harmed patients even to the point of causing death, yet were not terminated from their employment. (R. 77, PID 987, 989–90.) These arguments were not raised before the Magistrate Judge and will therefore not be considered. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517–18 (6th Cir. 2010) (citing *Ward v. United States*, 208 F.3d 216 (table) (6th Cir. 2000) ("[A] claim raised for the first time in objections to a magistrate judge's report is deemed waived.")). Arucan's second, eighth and ninth objections are overruled.

## C.

Arucan's third and fourteenth objections appear to be that the Magistrate Judge misread her complaint as stating that she was at the jail for 24 hours, when she actually wrote four hours, with a "greater than" ( ">") sign in front of it. (R. 77, PID 987, 992.) This does not affect the Report's recommendations and these objections are overruled.

## D.

Arucan's fourth objection is that she did not receive the original CCTV footage of the incident in discovery. (R. 77, PID 988.) But Arucan's motion to compel discovery of the CCTV tapes was denied, (R. 66, 69) so this objection is also overruled.

## E.

Arucan's fifth (and part of her third) objection asserts that she was not allowed to review her deposition transcript and that she was harassed during her deposition. (R. 77, PID 988.) This, like her other objections, does not contest a finding in the Report itself and has no bearing on the outcome of the Magistrate Judge's summary judgment analysis. It is overruled.

**F.**

Arucan's sixth, seventh, eleventh, and sixteenth objections raise arguments not presented in the summary judgment briefing. (R. 77, PID 988–92.) Number six claims that Cambridge East purposefully confused her as to which patients she needed to treat so that they could terminate her, (R. 77, PID 988–89) and number seven contends she did not harm the patient she erroneously treated[1] (R. 77 PID 989). In her eleventh objection, she says for the first time that she was framed (R. 77, PID 990–91), and in her sixteenth that she was forced to sign some paperwork regarding her criminal trespassing charge[2] (R. 77, PID 992). As these arguments were not raised before the Magistrate Judge, they are deemed waived. *See Swain*, 379 F. App'x at 517–18. Her objections are overruled.

**G.**

Arucan's tenth objection (R. 77, PID 990) is not responsive to the Report and re-asserts issues that were sufficiently addressed in the Report (R. 73, PID 954–68). Her tenth objection is overruled.

**H.**

Arucan's twelfth and thirteenth (and part of her first and fourth) objections are, in essence, a recital of her unlawful arrest and excessive use of force claims. (R. 77, PID 986–88, 991.) Arucan fails to identify any error in the Magistrate Judge's ruling that Defendants were entitled to summary judgment on these claims. Eastern District of Michigan Local Rule 72.1(d) requires that objections not only specify the part of the report to which a person objects, but also the basis for

---

[1] Even if this assertion is true, it does not negate the fact that she treated the incorrect patient and was terminated on that basis.

[2] It is unclear if Arucan is asserting that she did not knowingly plead to the trespassing charge, or if she did not knowingly waive her right to sue the police department regarding the underlying incident. Regardless, Arucan is raising this argument for the first time in her objections.

7

that objection. E.D. Mich. L.R. 72.1(d). An objection, then, that fails to show any error in the Magistrate Judge's analysis is not entitled to relief. *Adam v. Comm'r of Soc. Sec.*, No. 14-14724, 2016 WL 1084681, at *3 (E.D. Mich. March 21, 2016); *see also Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 508–09 (6th Cir. 1991).

Even if this Court were to liberally construe Arucan's objections as challenging the Magistrate Judge's finding of no genuine issue of material fact, her objections would still fail. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007); *see also Sellers v. Morris*, 840 F.2d 352, 355 (6th Cir. 1988) (applying liberal *pro se* pleading standard to objections for habeas petitioner). Officers Henrich and Zamojski assert that they are entitled to qualified immunity on the excessive force and false arrest claims. (R. 50, PID 269–72.) Defendants are entitled to qualified immunity if "they did not violate any of [plaintiff's] constitutional rights or (2) the violated rights, if any, were not 'clearly established' at the time of the alleged misconduct." *Ruffin v. Cuyahoga County, OH*, --- F. App'x ---, 2018 WL 343564, at *1 (6th Cir. Jan. 10, 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

As to the false arrest claim, "Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Arnold v. Wilder*, 657 F.3d 353, 363 (6th Cir. 2011). It also exists "when the police have 'reasonably trustworthy information ... sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "In obtaining such reliable information, an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence. Rather, the

8

officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).

"But a lack of probable cause is not necessarily fatal to an officer's defense against civil liability for false arrest. Rather, an officer is entitled to qualified immunity under § 1983 'if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent.'" *Green v. Throckmorton*, 681 F.3d 853, 865 (6th Cir. 2012) (quotation omitted); *see also Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 214 (6th Cir. 2011).

Under Michigan law, a person is trespassing if they remain on someone else's property after being notified to leave by the owner or agent of the owner. Mich. Comp. Law § 750.552. Even construing the record in the light most favorable to Plaintiff, it establishes that Officer Zamojski responded to a complaint "that an employee who had just been terminated from Cambridge East Healthcare Center would not leave the premises." (R. 50-3, PID 294.) And that, once he arrived, VanTiem told him that Arucan had been terminated "but would not leave the facility." (*Id.*) He observed that Arucan remained on the premises. Officer Heinrich similarly averred that he was called for assistance "by a Cambridge staff member who needed help with a former employee who refused to leave the facility." (R. 50-4, PID 299.) And that, when he arrived, VanTiem told him that Arucan had been terminated that morning and that "[VanTiem] had attempted to get [Arucan] to leave the premises after she was fired, but that [Arucan] refused." (*Id.*) He also observed that Arucan remained on the premises. Thus, even though Arucan claims she personally was never told to leave the premises, the totality of the circumstances would not have lead an officer to doubt the reasonableness of VanTiem's report and thus, the probable cause

9

they had to arrest Arucan. *Cf. Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 310 (6th Cir. 2005) (finding that a reasonable officer would not have concluded there was probable cause for the arrest when the plaintiff denied the account given to the officer and "undisputed documentary evidence" corroborated his claim). For her part, Arucan points to no law that would have alerted the officers that they lacked probable cause to arrest her for trespass because they were not the ones who asked her to leave. The officers were therefore properly granted summary judgment on Arucan's unlawful arrest claim.[3]

Arucan's excessive use of force claim also cannot survive summary judgment. She is claiming that the fact that she was handcuffed was an act of excessive force. (R. 5, PID 43; R. 77, PID 991.) The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure. *Morrison v. Bd. Of Trustees of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009) (citation omitted). "In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Id*. (citation omitted). Officer Heinrich, the arresting officer, testified that he took precautions to ensure that Arucan

---

[3] The Court also notes that Arucan pled no contest to trespassing. (R. 50-11.) In so doing, she admitted to the essential elements of trespassing. *See People v. Patmore*, 693 N.W.2d 385, 390 (Mich. Ct. App. 2004). And her conviction, "unless procured by false or fraudulent testimony or other unlawful means," is conclusive proof of probable cause. *See Moore v. Michigan Nat'l Bank*, 117 N.W.2d 105, 106 (Mich. 1962). While the law is unsettled on this issue, courts have applied estoppel principles to preclude a section 1983 plaintiff (in similar circumstances) from challenging probable cause. *See Walker v. Schaeffer*, 854 F.2d 138 (6th Cir. 1988) (plea of no contest in state court to criminal charges precluded subsequent claim of false arrest in federal court because plaintiff had a "full and fair opportunity to litigate" probable cause issue in state court proceeding); *Marmelshtein v. City of Southfield*, No. 07-15063, 2009 WL 648499, at *3 (E.D. Mich. March 11, 2009) (applying *Walker* to no contest plea under Michigan law to hold that plaintiff who pled no contest to disorderly conduct could not later claim false arrest).

would not sustain injury during the handcuffing process. (R. 50-4, PID 300.) He also testified that Arucan never complained of any pain nor did she ever request any medical attention. (*Id*.) And Arucan does not point to anything in the record to suggest she complained about the handcuffs being too tight. Indeed, in her objections, she indicates she did not tell the officers she was in any pain. (R. 77, PID 991.)

Nor does the record contain any genuine issue of material fact on actual injury. Arucan testified only that the handcuffing resulted in "sternal pain on my chest wall." (R. 71-3, PID 766, 770.) At the summary judgment stage, "a subjective assessment of pain does not amount to evidence of 'physical injury.'" *See Jackson v. Lubelan*, 657 F. App'x 497, 501 (6th Cir. 2016) (citing *Getz v. Swoap*, 833 F.3d 46, 653–54 (6th Cir. 2016) ("[N]ot all conduct that causes an arrestee discomfort or pain violates the Fourth Amendment.")). Arucan's excessive use of force claim therefore fails as a matter of law.

Arucan's twelfth and thirteenth (and corresponding parts of her first and fourth) objections are therefore overruled.

## IV.

In sum, Arucan's objections to the Report do not change the fact that the Defendants have met their summary judgment burden. Nor do the objections identify any genuine issues of material fact for trial. *See Anderson*, 477 U.S. at 249. So they are overruled and, for the reasons stated above, the Magistrate Judge's Report and Recommendation is ACCEPTED and Heinrich and Zamojski's motion for summary judgment (R. 50) and Cambridge East's motion for summary

judgment (R. 52) are GRANTED.

SO ORDERED.

Dated: March 30, 2018

s/Laurie J. Michelson
LAURIE J. MICHELSON
U.S. DISTRICT JUDGE

### **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2018.

s/Keisha Jackson
Case Manager